UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ANNA SHARROW,

                            Plaintiff,

      v.                                             **DECISION AND ORDER**
                                                                06-CV-92S

JO ANNE BARNHART,
COMMISSIONER OF SOCIAL SECURITY,

                            Defendant.

      1.      Plaintiff Anna Sharrow challenges an Administrative Law Judge's ("ALJ") determination that she is not disabled within the meaning of the Social Security Act ("the Act"). Plaintiff alleges that she has been disabled since May 7, 2002, due to back pain, right hip arthritis, high blood pressure, lumbar disc disease, and depression. Plaintiff contends that her impairments render her unable to work. She therefore asserts that she is entitled to disability benefits under the Act.

      2.      On August 25, 2004, the ALJ denied Plaintiff's application for social security benefits. Plaintiff exhausted her administrative remedies[1] and filed the instant action on February 10, 2006, challenging the ALJ's decision. The parties subsequently filed Motions for Judgment on the Pleadings on November 3, 2006. After full briefing, this Court deemed oral argument unnecessary and took the motions under advisement on November 9, 2006. For the following reasons, Defendant's motion is granted and Plaintiff's motion is denied.

      3.      A court reviewing a denial of disability benefits may not determine *de novo*

---

[1] The ALJ's decision became the Commissioner's final decision in this matter after the Appeals Council denied Plaintiff's request for review on January 19, 2006.

1

whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health and Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

    4. "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review."  Valente v. Sec'y of Health and Human Servs., 733 F.2d 1037, 1041 (2d Cir.

2

1984).

5.   The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. § § 404.1520, 416.920.  The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

6.   This five-step process is detailed below:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

7.   While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step of this inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education and work

3

experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

8.  In this case, the ALJ made the following findings with regard to the five-step process set forth above: (1) Plaintiff has not engaged in substantial gainful activity since the alleged onset of her disability (R. at 30); (2) Plaintiff's impairments are considered "severe" impairments within the meaning of the Act (R. at 30); (3) Plaintiff's impairments do not meet or equal an impairment listed in Appendix 1, Subpart P, Regulations No. 4 (R. at 30); (4) Plaintiff retained the residual functional capacity to perform light work activity with certain restrictions[2] (R. at 30); and (5) Plaintiff was unable to perform her past relevant work. (R. at 30). However, after considering Plaintiff's age, education, work experience, and residual functional capacity, the ALJ determined that a significant number of jobs existed in the national economy that Plaintiff could perform, and thus, Plaintiff was not disabled within the meaning of the Act at any time prior to his decision. (R. at 30-31).

9.  Plaintiff asserts a number of challenges to the ALJ's decision. First, Plaintiff argues that the ALJ failed to properly evaluate her residual functional capacity. In particular, Plaintiff contends that the ALJ did not consider all of the functional limitations indicated by Dr. Morris Newman in the Psychiatric Review Technique Form ("PRTF") and

---

[2]In particular, the ALJ found that Plaintiff had the following residual functional capacity: "light with the ability to briefly (one to two minutes) change positions at least every 30 minutes; no exposure to extremes of fumes, dusts, gases, or other respiratory irritants; no detailed or complex instructions; no close concentration or attention to detail for extended periods; must have allowance for extra supervision during the first 30 days in learning a new task; no work in close coordination with or in close proximity to more than six coworkers or supervisors; no fast paced or assembly line work; no more than occasional changes in the work setting; no travel as part of the job; no more than occasional requirement to set workplace goals; and must be able to miss up to one day [of] work per month." (R. at 30.)

4

Mental Residual Function Capacity Form ("MRFC"). In the PRTF, Dr. Newman indicated that Plaintiff had mild limitations in her daily living activities and social function, and moderate limitations in concentration and persistence. (R. at 245). In the MRFC, Dr. Newman indicated that Plaintiff had moderate limitations in concentration, persistence, adaptation, and social interaction. (R. at 249-50).

In his decision, the ALJ reviewed each of the limitations indicated in the PRTF and MRFC, and concluded that Plaintiff did not suffer from an impairment, or combination of impairments, equal in severity to any listed impairment. (R. at 23-25). Having reviewed the ALJ's Decision in light of plaintiff's arguments, this Court finds no error. The Decision contains an adequate discussion of medical evidence supporting the ALJ's residual functional capacity assessment, including the informed medical opinion of Dr. Newman, and the PRTF and MRFC evaluations. (R. at 23-25). Accordingly, this Court finds that the ALJ's functional capacity assessment is supported by substantial evidence in the record.

10. Plaintiff's second argument is that the ALJ did not properly weigh the opinions of her treating physicians. According to the treating physician rule,[3] the ALJ must give controlling weight to the treating physician's opinion when the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); see also Green-Younger v. Barnhart, 335 F.3d 99, 106-07 (2d Cir. 2003); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000).

---

[3] "The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No. 03-Civ.0075(RCC)(AJP), 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

Plaintiff contends that the ALJ improperly dismissed the opinion of Dr. K. Rhee,[4] who indicated that Plaintiff was disabled due to an inability to concentrate, focus, or organize, and an unstable emotional state. (R. at 306-08). The ALJ concluded that Dr. Rhee's "extreme assessment" was entitled to little or no weight because it was not consistent with the objective medical evidence in the record regarding Plaintiff's depression. (R. at 23). Dr. Kalaiselvi Rajendran, Plaintiff's treating psychiatrist who treated her from June 4, 2003 to September 10, 2003, indicated that although Plaintiff was crying and had difficulty concentrating after the death of her fiancé, her mood improved in later months and she showed more motivation. (R. at 302, 334-36). Dr. Meliton Tanhehco, Plaintiff's treating psychiatrist who treated her from October 16, 2003 to March 2, 2004, indicated that Plaintiff was "doing fine," described her as engaged, goal directed, and pleasant, and stated that she was taking Paxil and that it was "working out well." (R. at 330-33).

Dr. Rhee's assessment that Plaintiff was disabled due to an inability to concentrate, focus, or organize, and an unstable emotional state, is neither supported by nor consistent with the other evidence in the record, particularly the opinions of Plaintiff's treating psychiatrists. Accordingly, this Court finds that the ALJ did not err in attributing little to no weight to Dr. Rhee's opinion.

11.     Plaintiff's final argument is that the ALJ improperly relied on the testimony of the vocational expert in finding that Plaintiff could perform work that exists in significant

---

[4] Plaintiff misidentifies the medical records of Dr. K. Rhee, which appear at R. 306-08, as the medical records of Dr. Kalaiselvi Rajendran, plaintiff's treating psychiatrist. Plaintiff attributes this confusion to a typographical error and asserts that a comparison of signatures shows the records in question are from Dr. Rajendran. This Court has reviewed the records and is not persuaded by Plaintiff's argument.

numbers in the national economy. This Court does not agree. The regulations provide that when a claimant cannot perform the full range of work at a given exertional level due to his or her non-exertional impairments, the ALJ may rely upon a vocational expert to determine whether there is other work that exists in significant numbers in the national economy that the claimant could perform given his or her residual functional capacity, age, education, and past work experience. 20 C.F.R. § 404.1566(e). In this case, the vocational expert indicated that a hypothetical person of Plaintiff's age, education, work experience, and with her residual functional capacity could perform several "light work" occupations which existed in significant numbers in the national economy. (R. at 62-66). The vocational expert testified that his conclusions were consistent with the Dictionary of Occupational Titles ("DOT"). (R. at 63).

The definition of "light work" does not specifically address a claimant's need to sit every thirty minutes or have additional supervision during the first 30 days of work. See 20 C.F.R. § 416.967(b). The vocational expert testified, however, that certain positions listed in the DOT[5] as "light work" would permit Plaintiff's additional restrictions. (R. at 61-67). Because these additional restrictions considered by the vocational expert are not inconsistent with the definitions in the DOT, this Court finds that the ALJ properly relied on the vocational expert's opinion.

12. After carefully examining the administrative record, this Court finds that substantial evidence supports the ALJ's decision in this case. Specifically, the medical evidence and opinions contained in the record (including the vocational opinion), in

---

[5] Specifically, DOT 208.685-034, machine tender; DOT 239.567-010, unskilled office helper; and DOT 316.684-014, food preparation worker. (R. at 62-63).

conjunction with Plaintiff's testimony, support the ALJ's determination. This Court finds no reversible error in the ALJ's overall weighing of the evidence or in his credibility determination, and finds that substantial evidence of record supports his decision. Accordingly, Defendant's Motion for Judgment on the Pleadings is granted and Plaintiff's motion seeking the same relief is denied.

IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings (Docket No. 11) is GRANTED.

FURTHER, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 10) is DENIED.

FURTHER, that the Clerk of the Court is directed to take the necessary steps to close this case.

SO ORDERED.

Dated:   March 25, 2007
         Buffalo, New York

                                /s/William M. Skretny
                                WILLIAM M. SKRETNY
                                United States District Judge